BRETT J. WILLIAMSON (SBN 145235)
bwilliamson@omm.com
NORA N. SALEM (SBN 307968)
nsalem@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Plaintiff Share Our Selves
*(additional counsel information on next page)*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SHARE OUR SELVES CORPORATION, a California non-profit corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SANTA ANA, a municipal corporation, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | CASE NO. 8:23-cv-00504-DOC-DFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Request for Judicial Notice and Exhibits; and Proposed Order filed concurrently]<br><br>DATE:  January 13, 2025<br><br>TIME:  8:30 a.m.<br><br>COURTROOM:  10-A<br><br>JUDGE:  The Hon. David O. Carter |

1

EDMOND M. CONNOR (SBN 65515)
edmond.connor@tuckerellis.com
DOUGLAS A. HEDENKAMP (SBN 216487)
Douglas.Hedenkamp@tuckerellis.com
**TUCKER ELLIS LLP**
2211 Michelson Drive, Ste 1100
Irvine, CA 92612
Telephone: (949) 622-2600
Facsimile: (949) 622-2626

Attorneys for Plaintiff Share Our Selves

2

# TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT.........................................................................8

II.   ARGUMENT..............................................................................................9

  A.   SOS Has Plausibly Alleged Violations Of The Fourteenth Amendment......9

    1.   The Ordinances Deprived SOS of Several Property Interests Protectable
         under the Due Process Clause. ...............................................................9

      a)   SOS's Protectable Equitable Interest in the Property.........................10

      b)   SOS's Protectable Interest in a Ministerial Building Permit..............11

      c)   SOS's Protectable Interest in Legitimate Use of Land.......................12

    2.   SOS Has Plausibly Alleged that the City Violated its Substantive Due
         Process Rights.......................................................................................13

    3.   SOS Has Plausibly Alleged that the City Violated its Procedural Due
         Process Rights.......................................................................................15

  B.   SOS's Claims Are Not Time Barred ............................................................18

  C.   SOS Has Alleged A Valid Intergovernmental Immunity Claim.................20

    1.   FQHCs Like SOS Are Protected by Intergovernmental Immunity. .......20

    2.   The Ordinances Discriminate Against FQHCs .....................................22

  D.   The City's Challenges to the Third Claim for Relief Are Meritless ...........24

    1.   The City is Disqualified From Invoking the Federal Common Law
         Emergency Notice Exemption................................................................24

    2.   Government Code sections 65009, 65010, and 65093 do not apply to
         Third Claim for Relief because no purely state law claims are asserted.
         .............................................................................................................25

    3.   The City did not comply with applicable notice requirements. .............27

Opposition To Motion To Dismiss Second Amended Complaint

# TABLE OF AUTHORITIES

**Cases**

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509
F.3d 1020 (9th Cir. 2007) ................................................................ 18, 19

*Ahir v. City of Anaheim*, 2024 WL 3503063 (C.D. Cal. June 11, 2024) ............... 18

*Alameda Health Sys. v. Centers for Medicare & Medicaid Servs.*, 287
F.Supp.3d 896 .......................................................................................... 21

*Alhambra Redevelopment Agency v. Transamerica Fin. Servs.* 212
Cal.App.3d 1370 (Cal. Ct. App. 1989) ...................................................... 10

*Anderson v. City Council of City of Pleasant Hill*. 229 Cal.App.2d 79
(1964) ................................................................................................... 12, 13

*Architectureart, LLC v. City of San Diego*, 2016 WL 1077124 (S.D.
Cal. Mar. 18, 2016) ................................................................................... 19

*Armstrong v. Reynolds*, 22 F.4th 1058 (9th Cir. 2022) ............................... 10

*Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988) ................................ 9, 11, 13, 14

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ................... 10

*Bernstein v. Smutz* 83 Cal.App.2d 108 (1947) ......................................... 14

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915) ......... 16

*Bird v. Dep't of Human Servs.*, 935 F.3d 738 (9th Cir. 2019) ...................... 19

*Boeing v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014) ........................... 22, 24

*Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577 (9th Cir.
2012) ........................................................................................................ 20

*California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007
(9th Cir. 2013) .......................................................................................... 21

*California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, 2023 WL
1869010 (E.D. Cal. Feb. 9, 2023) ........................................................... 19

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ............................... 15

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496
(9th Cir. 1990) .......................................................................................... 15

*Ellis v. City Council of City of Burlingame* 222 Cal.App.2d 490
(1963) ....................................................................................................... 13

*Env't Def. Project of Sierra Cnty. v. Cnty. of Sierra* (2008) 158
Cal.App.4th 877 ....................................................................................... 26

*Fiori-Lacivita v. Franco-Palacios*, 2019 WL 2082957 (D.N.J. May 13,
2019) ........................................................................................................ 22

*Flynt v. Shimazu*, 940 F.3d 457 (9th Cir. 2019) ...................................... 20

*Folse v. City of Huntington*, 2024 WL 1270531 (S.D.W. Va. Mar. 5, 2024) ...................................................................................... 11

*GEO Group, Inc. v. Newsom*, 50 F. 4th 745 (9th Cir. 2022) ................................... 22

*GEO Grp., Inc. v. Inslee*, 720 F.Supp.3d 1029 (W.D.Wash. 2024) ............. 22, 23, 24

*Harris v. County of Riverside*, 904 F.2d 497 (9th Cir. 1990) .......................... passim

*Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959 (9th Cir. 2003) ........................................................... 15, 16, 17

*In re Berg*, 2015 WL 3792654 (Bankr. S.D. Cal. June 9, 2015) ............................ 10

*In re Hathaway Ranch P'ship*, 127 B.R. 859 (Bankr. C.D. Cal. 1990) ................. 10

*In re RW Meridian LLC*, 564 B.R. 21 (B.A.P. 9th Cir. 2017) ............................... 10

*Jensen v. County of Sonoma*, 2010 WL 2330384 (N.D. Cal. June 4, 2010) ........................................................................................ 13

*Joseph v. Vaydovsky*, 2018 WL 5095990 (D.N.J. Oct. 18, 2018) ......................... 22

*Keller v. City of Scranton*, 2013 WL 1681524 (M.D. Pa. Apr. 17, 2013) ........................................................................................ 10

*Killgore v. City of S. El Monte*, 860 F. App'x 521 (9th Cir. 2021) ...................... 18

*League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052 (9th Cir. 2007) ............................................. 14

*Lindow v. Wallace*, 2020 WL 9396522 (N.D. Cal. July 6, 2020) ......................... 19

*Lull v. Cnty. of Placer*, 2020 WL 1853017 (E.D. Cal. Apr. 13, 2020) ................. 19

*Martin v. Patel*, 2018 WL 2717848 (S.D. Cal. June 6, 2018) ............................... 21

*McCulloch v. Maryland*, 17 U.S. 316 (1819) ....................................................... 20

*McQuiston v. City of Los Angeles*, 564 F. App'x 303 (9th Cir. 2014) ................. 18

*Mendez v. United States*, 2017 WL 1882472 (D.N.J. May 9, 2017) ..................... 22

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983) ................................. 18

*Mir v. Kirchmeyer*, 2014 WL 2436285 (S.D. Cal. May 30, 2014) ....................... 26

*Moreland Properties, LLC v. City of Thornton*, 559 F. Supp. 2d 1133 (D. Colo. 2008) ................................................................ 17

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991) ................................................................ 17

*North Dakota v. United States*, 495 U.S. 423 (1990) ............................................ 22

*Pac. Nw. Venison Producers v. Smitch*, 1992 WL 613294 (W.D. Wash. Sept. 2, 1992) ........................................................ 26

*Paciulan v. George*, 229 F.3d 1226 (9th Cir. 2000) ............................................... 9

*Pediatric & Fam. Med. Found. v. United States Dep't of Health & Hum. Servs.*, 2017 WL 8220596 (C.D. Cal. July 6, 2017)....................................21

*Phan v. City of Garden Grove*, 2022 WL 3137448 (C.D. Cal. June 24, 2022)....................................................................................................18

*Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993)...........15

*Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668 (9th Cir.2011) ..............................................................................10

*Samson v. City of Bainbridge Island*, 683 F.3d 1051 (9th Cir. 2012)..............16, 25

*Sinclair v. City of Needles*, 2004 WL 7331736 (C.D. Cal. Feb. 23, 2004)........................................................................................................15

*Stubblefield Construction Co. v. City of San Bernardino* 32 Cal. App. 4th 687 (1995) ..................................................................................12

*Thomas v. Cnty. of Humbolt*, 2023 WL 3437295 (N.D. Cal. May 12, 2023)........................................................................................................19

*TwoRivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999)....................................19

*U.S. v. City of Arcata*, 629 F.3d 986 (2010)...........................................20

*United States Postal Serv. v. City of Berkeley*, 228 F. Supp. 3d 963 (N.D. Cal. 2017) ............................................................................23, 24

*United States v. Kernen Construction*, 349 F. Supp. 3d 988 (E.D. Cal. 2018)........................................................................................................23

*Valdez v. Scottsbluff Operations LLC*, 2024 WL 2092038 (D. Neb. May 9, 2024)....................................................................................21

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994)........................................................................................................11

*Weinberg v. Whatcom County.*, 241 F.3d 746 (9th Cir. 2001)................14

*Young v. United States*, 152 F. Supp. 3d 337 (D.N.J. 2015)....................22

**Statutes**

42 U.S.C. § 1396a ...................................................................................21

42 U.S.C. § 1983..................................................................18, 19, 26, 28

42 U.S.C. § 201.......................................................................................20

42 U.S.C. § 233.......................................................................................21

California Government Code § 65009 ..................................18, 19, 25, 26

California Government Code § 65010 .............................................25, 26

California Government Code § 65090 .............................................27, 28

California Government Code § 65091 .............................................25, 27

California Government Code § 65093 ................................................................25, 26

California Government Code § 65094 ........................................................................28

California Government Code § 65804 ..................................................................27, 28

California Government Code § 65854 ..................................................................27, 28

California Government Code § 65858 ..........................................................24, 25, 27

California Welfare & Institutions Code § 14132.100 ..............................................21

Santa Ana Zoning Municipal Code § 41-765............................................................11

U.S. CONST., art. VI.................................................................................................20

**Regulations**

42 C.F.R. § 405.2430.........................................................................................20, 22

42 C.F.R. § 405.2434.................................................................................................20

42 C.F.R. § 405.2448.................................................................................................20

42 C.F.R. § 405.2470.................................................................................................20

California Code of Regulations, title 14, § 15369....................................................11

# I.       SUMMARY OF ARGUMENT

In hurriedly adopting the Medical Office CUP Requirement, the City had one objective in mind: to deprive SOS[1] of the "by right" medical office use of the Main Street Property (the "Property") before SOS could obtain the nondiscretionary, ministerial approvals that the City had twice confirmed were available to SOS.

Based on those confirmations, SOS spent substantial time and money developing plans to remodel the Property and open an expanded medical, dental, vision, and pharmaceutical clinic in the City's Professional zoning district ("P District") to serve low-income, medically-underserved residents of Santa Ana.

Just as SOS was on the verge of obtaining the necessary approvals, the City pulled the rug out from under SOS, and amended its Zoning Code without following its normal procedures to provide legal notice to the public and individual notice to SOS.  Instead of providing public notice under its ordinary procedures, the City suddenly declared an "emergency" based on a wholly-unfounded "threat" to health, safety, and welfare.  In reality, the only emergency was the fact that SOS was about to obtain a ministerial approval of a building permit for its expanded clinic.

The sudden imposition of the Medical Office CUP Requirement was the moving force that set in motion a foreseeable series of events that culminated in the scuttling of SOS's purchase and remodeling plans and SOS's loss of hundreds of thousands of dollars in planning and escrow extension costs—dollars that could have been better spent, and are still greatly needed, to serve the healthcare needs of the working poor in Santa Ana.

In its Second Amended Complaint ("SAC"), SOS is not challenging the City's right to amend its Zoning Code in the normal manner prescribed by law.

---

[1] Share Our Selves Corp ("SOS") and Turner Healthcare Facilities Acquisition LLC ("Turner") are referred collectively as ("SOS") throughout given Turner's assignment of all its claims to SOS.

Rather, based on clear Ninth Circuit precedent, including *Harris v. County of Riverside*, 904 F.2d 497, 502-504 (9th Cir. 1990) and *Bateson v. Geisse*, 857 F.2d 1300, 1303–04 (9th Cir. 1988), SOS is challenging the City's failure to act in the normal manner prescribed by law when it "targeted" and "exceptionally affected" SOS without providing SOS with notice or satisfying ordinary public notice requirements.  This undeniably deprived SOS of several protected property interests in violation of SOS's procedural and substantive due process rights under the Fourteenth Amendment.

As a Federally Qualified Health Center ("FQHC"), SOS is also challenging the Medical Office CUP Requirement because it blatantly violates the intergovernmental immunity doctrine by openly discriminating against "government-subsidized, not-for-profit" entities (i.e., FQHCs) by singling them out for unfair and disparate treatment, even including control of their daily hours of operation.   The Ordinances do not subject "for profit" medical offices in the P District to the same onerous regulations being imposed on FQHCs which, as explained below, are directly aligned with and regulated by the federal government.

In its Motion to Dismiss ("Motion"), the City mainly attacks the facts alleged in the SAC and raises issues that are more appropriate for resolution at the summary judgment stage after the parties have been allowed to engage in pretrial discovery.  The SAC plausibly alleges claims for denial of procedural and substantive due process, violation of the intergovernmental immunity doctrine, and declaratory relief.  Accordingly, the City's Motion should be denied in its entirety.

## II.      ARGUMENT

**A.      SOS Has Plausibly Alleged Violations Of The Fourteenth Amendment.**

**1.      The Ordinances Deprived SOS of Several Property Interests Protectable under the Due Process Clause.**

A Due Process Claim (procedural or substantive) requires a protectable property interest.  *See Paciulan v. George*, 229 F.3d 1226, 1230 (9th Cir. 2000);

*Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022).  SOS has plausibly alleged several protectable property interests, including: a) an equitable interest in the Main Street Property; b) an interest in a non-discretionary building permit; and c) an interest in a land use allowed by then-existing zoning.  SAC ¶¶ 21, 27–29. The Motion's attempts to disprove SOS's property interests fail.

### a)    SOS's Protectable Equitable Interest in the Property

The City first argues that "SOS did not have a property interest in the Property" because SOS "did not own it, lease it, operate a business on it, or have the right to occupy it."  Mot. at 14:4-5.  But "the property interests protected by procedural due process extend well beyond actual ownership of real estate."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972).  Under California law "the purchaser of real property under a purchase and sale agreement [has] 'equitable title' . . . in the property."  *In re RW Meridian LLC*, 564 B.R. 21, 29 (B.A.P. 9th Cir. 2017); *see also In re Hathaway Ranch P'ship*, 127 B.R. 859, 863 (Bankr. C.D. Cal. 1990) (purchaser "is considered an equitable owner.").  Turner and SOS entered into a purchase and sale agreement to buy the Property on March 7, 2022.  SAC ¶ 126.  Thus, SOS has plausibly alleged that it had an equitable interest in the Property.[2]

Such an equitable interest triggers due process protections.  *See, e.g.*, *Keller v. City of Scranton*, 2013 WL 1681524, at *2 (M.D. Pa. Apr. 17, 2013) (equitable interest in the Property was sufficient "to entitle him to procedural due process safeguards."); *Folse v. City of Huntington*, 2024 WL 1270531, at *4 (S.D.W. Va.

---

[2] The city dismisses *Mathis v. County. of Lyon* presumably because the case dealt with a trust instrument, but ignores the other cases cited in the SAC for the proposition that the purchaser under a valid sales contract is "the equitable owner of the land."  *In re Berg*, 2015 WL 3792654, at *6 (Bankr. S.D. Cal. June 9, 2015), citing *Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 678–79 (9th Cir.2011); *see also Alhambra Redevelopment Agency v. Transamerica Fin. Servs*. 212 Cal.App.3d 1370, 1375 (Cal. Ct. App. 1989) (similar).

Mar. 5, 2024), report and recommendation adopted, 2024 WL 1260624 (S.D.W.
Va. Mar. 25, 2024) (purchaser of real property tax-sale certificates had a "future
interest" triggering due process protections).

> **b)    SOS's Protectable Interest in a Ministerial Building Permit**

The City argues that SOS does not have a property interest in the permitted
use because it never received a building permit.  Mot. at 14:9-10.  A state law that
compels issuance of a license or permit after objective criteria are satisfied creates a
protected property interest in the license.  SAC ¶ 30 (citing cases); *see also*
*Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).
Here, California law required issuance of SOS's building permit after a ministerial,
non-discretionary review, giving SOS a protected property interest in the approval.
SAC ¶ 29.  *Bateson, supra*, 857 F.2d at 1303.

A "ministerial" building permit is one that "involves only the use of fixed
standards or objective measurements," leaving "little or no personal judgment by
the public official as to the wisdom or manner of carrying out the project."  Cal.
Code Regs. tit. 14, § 15369.  Section 41-765 of City's Zoning Code limits the
review of a building permit application to whether the application is in
"conformance" with the Zoning Code's objective criteria.  SAC at ¶ 37.  Because
SOS's project conformed with Zoning Code, SOS was entitled to a ministerial
permit review, which the City Planning Manager expressly confirmed.  SAC at ¶
19, Ex. A.  Therefore, SOS had a reasonable expectation of and a protected
property in ministerial approval of its remodeling application and issuance of a
building permit.

The City argues that SOS relies "solely" on the City Planning Manager's
email confirmation.  Mot. at 14:10-12.  Untrue.  SOS primarily relied on the City
Zoning Code which allowed medical offices in the P District, and provided the
criteria triggering ministerial review.   The City Planning Manager simply
confirmed that SOS met those objective criteria.  The City's reliance on *Midway*,

*Boren*, and *Sunnyvale* is misplaced because they hold that statements of **unauthorized** public officials regarding **discretionary** matters cannot be reasonably relied on. *See* Mot. at 14:12-23. This rule does not apply here because the City Planning Manager's statement did not regard a discretionary matter, but a ministerial one. The City fails to explain how the City Planning Manager was not authorized to determine whether an applicant is entitled to a ministerial permit review.

### c) SOS's Protectable Interest in Legitimate Use of Land

SOS had a protectable due process interest in the allowable uses of the Property. The City's argument that "Turner/SOS has no vested or equitable right to zoning existing before the Ordinances" relies on three distinguishable cases, *Anderson* and *Avco* which concern estoppel, *not* due process, and *Stubblefield*, which noted that a vested right for estoppel purposes is <u>not</u> required for a due process claim. Mot. at 14:24-25.

Indeed, *Anderson* held that where a building permit is issued and the permittee incurs obligations or commences construction, the government is "estopped to set up a zoning ordinance" to bar the use allowed by the permit. *Anderson v. City Council of City of Pleasant Hill*. 229 Cal.App.2d 79, 89 (1964). But SOS is not contending that the City was estopped from enacting a new zoning ordinance, it is merely contending that it had a protectable interest in using the Property that required *adequate notice* before the previously allowable uses could be subjected to a CUP requirement.

In *Stubblefield*, the court accepted the plaintiffs' argument that they "did not have to have a vested right in order to assert substantive due process," but held that the City's actions were not arbitrary or irrational. *Stubblefield Construction Co. v. City of San Bernardino* 32 Cal.App.4th 687, 709 (1995). Unlike in this case, there was no due process lack of notice issue in *Stubblefield*.

The facts here mirror *Harris v. County of Riverside*. 904 F.2d 497 (9th Cir.

1990).  The defendant, like the City in this case, enacted a zoning ordinance targeting a small number of land users without providing them notice, and affecting a land use that was previously allowed by right.  *Id*.  The Ninth Circuit found that for the purpose of a due process right to notice, the Constitution protects a right of a land owner "to any legitimate use" of his property—no building permit was required.  *Id.* at 503.

Like the plaintiff in *Harris*, SOS was deprived of a previously allowable "by right" use through a zoning change.  Therefore, SOS lost a property interest protectable under the Due Process Clause.  *See also Jensen v. County of Sonoma*, 2010 WL 2330384, at *13 (N.D. Cal. June 4, 2010) (for purposes of procedural due process, "the right to the use and enjoyment of one's property—is a well-established constitutional property right").

The broad language sometimes employed in the building permit estoppel cases like *Avco* and *Anderson* must be read in context.  Failure to do so would result in *Harris* being incorrect, which the City does not argue.  Outside that context, California courts have recognized an enforceable right to the issuance of ministerial building permits when the ministerial requirements are met.  *Ellis v. City Council of City of Burlingame* 222 Cal.App.2d 490, 496 (1963).  *Harris*, *Jensen*, and *Bateson* all provided due process protection to the legal right to use a property for purposes allowed by law, without the need to discuss the estoppel-based concept of "vested rights."  That concept does not apply to protected property interests that are deprived without valid notice or other due process of law.

**2.**    **SOS Has Plausibly Alleged that the City Violated its Substantive Due Process Rights.**

A substantive due process claim requires showing that the government's interference with property rights was "irrational or arbitrary."  *See Bateson, supra*, 857 F.2d at 1303.  The City's refusal to process SOS's remodeling application based on the "unconstitutionally enacted and void Urgency Ordinance" was

irrational and arbitrary.  SAC at ¶ 207.

In *Bateson*, cited by the City, the plaintiff purchased land and applied for a building permit subject only to objective criteria.  *Id.* at 1302-1303.  The landowner fulfilled the requirements, but the City withheld the building permit anyway.  *Id*. at 1302.  The court found that the refusal was arbitrary and irrational, and violated substantive due process.  *Id*. at 1303

The same is true here.  Like the plaintiff in *Bateson*, before the Urgency Ordinance, SOS satisfied the criteria for a by-right permit approval.  SAC ¶¶ 31-38.  While applying *valid* zoning laws to deny an approval may be rational, *see League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052, 1056 (9th Cir. 2007), rejecting a by-right application based on invalid zoning ordinances is not.  *See Bateson*, 857 F.2d at 1303.

The City argues that SOS cannot allege that the Ordinances were not "rationally related to legitimate governmental interests," or were "clearly arbitrary and unreasonable."  Mot. at 17:6-9.  To the contrary, the SAC alleges that the adoption of the Medical Office CUP Requirement as part of the Urgency Ordinance was not rationally related to any actual emergency, because none existed.  SAC ¶ 72; *see also*  ¶¶ 2, 57, 73.

If, as discovery will show, the "emergency" declared by the City was nothing but a pretense to avoid having to comply with due process notice requirements, then it was certainly "arbitrary and unreasonable" and had no nexus to legitimate governmental interests.  *See, e.g.*, *Weinberg v. Whatcom County.*, 241 F.3d 746, 754 (9th Cir. 2001) ("There was simply *no nexus* between any possible emergency Weinberg's continued construction") (emphasis added); *Bernstein v. Smutz* 83 Cal.App.2d 108, 124 (1947) ("it appears that [the ordinance] has *no relation* to the ends for which the police power exists. . . . It would appear from the record before us that the *emergency* seems to have been petitioner's pending application.") (emphasis added).

The City cites *County of Sacramento v. Lewis*, to argue that only "the most egregious official conduct" is arbitrary.  523 U.S. 833, 845-46 (1998).  The finding in that case was limited to abusive *executive* action.  *Id*. ("Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary.").  The Ninth Circuit commonly reverses orders dismissing substantive due process claims in non-executive contexts where the record lacks sufficient findings.  *See, e.g.*, *Sinclair v. City of Needles*, 2004 WL 7331736, at *5 (C.D. Cal. Feb. 23, 2004); and *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990).

### 3.    SOS Has Plausibly Alleged that the City Violated its Procedural Due Process Rights.

To state a procedural due process claim, a plaintiff must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  SOS has alleged that (1) the Medical Office CUP Requirement was targeted at SOS and (2) deprived it of protected property interests, (3) without providing the required individual notice.  *See* SAC ¶¶ 64, 66–68, 203–205.

The City argues that SOS was not owed individualized notice because the zoning changes were supposedly "legislative."  *See* Mot. at 18:13-24, 20:14-23. However, the Ninth Circuit has been clear that government actions like zoning changes are not categorically immune from due process protections as "legislative" acts:

> Of course, public decision-makers cannot sidestep the dictates of due process by simply giving their actions a legislative moniker. Our cases have been careful to focus on the character of the action, rather than its label, avoiding formalistic distinctions between 'legislative' and 'adjudicatory' or 'administrative' government actions.

*Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 969 (9th Cir. 2003) (internal quotations omitted); *see also Harris* at 501-502.  The correct

question is not what *label* the City gave its action, but the *character* of the action.

The City ignores this portion of *Hotel & Motel Ass'n*, and instead cites that case and *Samson v. City of Bainbridge Island* for the broad proposition that procedural due process protections do not apply to *legislative* acts.  Mot. at 20:15-16.  But the character of the act in *Hotel & Motel Ass'n* was legislative because it affected at least the forty-nine individual plaintiffs involved in the case  344 F.3d at 969.  Similarly, the emergency ordinance in *Samson* "applied generally to all owners of shoreline property on Bainbridge Island," which undoubtedly entailed hundreds of owners.  *Samson  v. City of Bainbridge Island*, 683 F.3d 1051, 1061 (9th Cir. 2012).

In contrast, courts have held that procedural due process protections do apply when only a few persons or entities are affected on individual grounds. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 446 (1915).  Here, the Ordinances were *specifically targeted* at SOS's new project.  SAC ¶ 64.  The Ordinances seek to impose a burdensome CUP requirement in just one zoning district (P), and only on not-for-profit medical offices operated by non-profit, government subsidized entities.  SAC ¶ 1–2.  SOS was the *only* such user attempting to open a medical center in the P District at the time that the Ordinances were adopted.  SAC ¶ 2.  Moreover, only two other FQHCs were operating medical offices in the P district.  *Id*.  Because such a very small group is concerned, and SOS was exceptionally affected on individual grounds, procedural due process protections apply.  *See Bi-Metallic*, 239 U.S. at 446.

The Ninth Circuit, facing a nearly identical set of facts in *Harris*, 904 F.2d 497 found *on the merits* that a procedural due process violation had occurred. Realizing the importance of *Harris*, the City tries to distinguish the case, but fails.

In *Harris*, the government required the Plaintiff to obtain a CUP in order to continue a previously allowable use of his land.  *Harris*, 904 F.2d at 488–89, 502. The City did the same thing to SOS here.  The City argues that this case is different

because "[t]he Ordinances did not effect a zone change." Mot. at 19. But no cases support its contention that this difference should determine whether a due process claim survives. The impact is the same in both cases, which is what matters. *See Hotel & Motel Ass'n of Oakland*, 344 F.3d at 969.

The City next argues that *Harris* is different because Harris "owned the subject land" and "operated a business on it." Mot. at 19:6-7. This is merely a rehash of the City's arguments addressed in §II.A.1, supra.

Finally, the City attempts to distinguish *Harris* by arguing that in *Harris* the government "specifically targeted" Harris. Mot. at 19:18-21. But, that is *exactly* what SOS alleges happened here. SAC ¶ 64 ("[T]he City's insertion of the Medical Office CUP Requirement . . . was (a) directly precipitated by, (b) *specifically targeted* at, and (c) purposely designed to thwart and derail[] SOS's plans.") (emphasis added).

Other courts agree. In *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, the landowner's plot was part of a small group of parcels selectively rezoned to prevent the owner's intended use. 949 F.2d 890, 892 (6th Cir. 1991). Because he was especially affected by the zoning change, the landowner's "right to a hearing [was] triggered.". *Id*. at 896. Similarly in *Moreland Properties, LLC v. City of Thornton*, the court found that a zoning change that affected "just a handful of readily ascertainable landowners" triggered due process protections. 559 F. Supp. 2d 1133, 1161 (D. Colo. 2008).[3]

The City next claims SOS could have applied for a CUP. Mot. at 20:8-11. But the plaintiff in *Harris* also could have applied for a CUP, and the Court found his due process claim was ripe because the rezoning decision was "a single decision with its own consequences." *Harris*, 904 F.2d at 501-502. Here, the Medical

---

[3] *Nasierowski Bros. Inv. Co. v. City of Sterling Heights* and *Moreland Properties, LLC v. City of Thornton* were not decided under California law, but they show that federal courts nationwide rely on *Harris* to protect due process rights relating to zoning. *Nasierowski*, 949 F.2d at 895; *Moreland*, 559 F. Supp. 2d at 1160.

1  Office CUP Requirement unfairly imposed the extra time and cost of applying for a
2  CUP, which caused SOS to lose its opportunity to buy the Property altogether.
3  SAC ¶ 192.

4      Because the Ordinances deprived SOS's protectable property interests, the
5  City should have given SOS individualized notice.  *See Mennonite Bd. of Missions
6  v. Adams*, 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to
7  ensure actual notice is a minimum constitutional precondition to a proceeding
8  which will adversely affect [] liberty or property interests.").  And as alleged in the
9  SAC, the City failed to do so.  SAC ¶ 58.  In fact, the City failed to give adequate
10 public notice as well.  *Id*. ¶ 51.

11 **B.    SOS's Claims Are Not Time Barred**

12     The City argues that all of SOS's claims are time-barred by Government
13 Code section 65009(c)(1)(B).  Federal case law is entirely at odds with the City's
14 position.

15     Without exception, the Ninth Circuit has consistently applied the two-year
16 statute of limitations to 1983 claims, as this Court noted in *Phan v. City of Garden
17 Grove*, 2022 WL 3137448, at *2 (C.D. Cal. June 24, 2022):  "It is well-established
18 that claims brought under § 1983 . . . borrow the forum state's statute of limitations
19 for personal injury claims, which in California is two years.  *Action Apartment
20 Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)."

21     In numerous cases, the Ninth Circuit and district courts throughout California
22 have applied section 65009 to bar state law claims, but have <u>not</u> applied that section
23 to bar any constitutional claims asserted under section 1983. *See, e.g., Killgore v.
24 City of S. El Monte*, 860 F. App'x 521, 523 (9th Cir. 2021); *McQuiston v. City of
25 Los Angeles*, 564 F. App'x 303, 306 (9th Cir. 2014); *Ahir v. City of Anaheim*, 2024
26 WL 3503063, at *3 (C.D. Cal. June 11, 2024).

27     Further, two district courts in California have specifically addressed the
28 65009 issue and both courts found that the two-year statute of limitation applies.

1  *See Architectureart, LLC v. City of San Diego*, 2016 WL 1077124, at *5 (S.D. Cal.

2  Mar. 18, 2016); *California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, 2023

3  WL 1869010, at *12 (E.D. Cal. Feb. 9, 2023).

4       In the *Action Apartment* case, the Ninth Circuit held that the two-year

5  "limitations period applies to all § 1983 claims, regardless of the civil right

6  asserted." (509 F.3d at 1027.)  *Accord*, *Thomas v. Cnty. of Humbolt*, 2023 WL

7  3437295, at *16 (N.D. Cal. May 12, 2023); *Lull v. Cnty. of Placer*, 2020 WL

8  1853017, at *8 (E.D. Cal. Apr. 13, 2020) (two-year statute of limitations applied to

9  procedural and substantive due process claims).

10      Moreover, in analyzing accrual, the Court in *Action Apartment*

11  acknowledged the "general rule" applied by federal courts: "the statute of

12  limitations begins to run when a potential plaintiff knows or has reason to know of

13  the asserted injury."  *Id.*

14      "'Although state law determines the length of the limitations period, federal

15  law determines when a civil rights claim accrues.' [citations.] Under federal law,

16  the 'discovery rule' typically governs the accrual of § 1983 claims.'" *Bird v. Dep't*

17  *of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (quoting *TwoRivers v. Lewis*,

18  174 F.3d 987, 992 (9th Cir. 1999)); *Lindow v. Wallace*, 2020 WL 9396522, at *4,

19  fn. 2 (N.D. Cal. July 6, 2020) (same).

20      SOS was completely unaware of the Urgency Ordinance until SOS was

21  informed via email on December 29, 2022, by the City's Planning Manager. (SAC

22  ¶¶ 59, 157.)  As such, even assuming, for the sake of argument only, that the 90-day

23  statute of limitations under 65009 applied, that 90-day period did not start running

24  until December 29, 2022 under the federal accrual rule.  The service of the SOS's

25  Complaint on the City on March 21, 2023 was well within the 90-day limit.

26  Therefore, section 65009 does not bar SOS's claims.

27      The City contends that section 65009 should be applied to SOS's Supremacy

28  Clause claim, but the Ninth Circuit has applied the two-year statute of limitations

broadly to constitutional claims. *Flynt v. Shimazu*, 940 F.3d 457, 461–62 (9th Cir. 2019). Based on this same reasoning, the two-year statute of limitations should apply to SOS's Supremacy Clause claim. *See, also*, *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) ("federal, not state, law determines when a federal cause of action accrues.")

**C.      SOS Has Alleged A Valid Intergovernmental Immunity Claim.**

"A state or local law is invalid … if it discriminates against the Federal Government or those with whom it deals." *U.S. v. City of Arcata*, 629 F.3d 986 (2010); U.S. CONST., art. VI; *see also McCulloch v. Maryland*, 17 U.S. 316, 327 (1819).

**1.      FQHCs Like SOS Are Protected by Intergovernmental Immunity.**

SOS qualifies for intergovernmental immunity either because it operates as the federal government for purposes of immunity, or because it is an entity "with whom [the federal government] deals." *City of Arcata*, 629 F.3d at 986. The City argues that FQHCs (despite having the word "federally" in their name) are actually *state* entities.

To the contrary, FQHCs were created by the Medicare and Medicaid Act of 1965. Pub. L. 89–97, 79 Stat. 286. They are supervised by the U.S. Health Resources and Services Administration. *See, e.g.*, 42 C.F.R. § 405.2430. They operate subject to requirements of the federal Public Health Service Act and federal regulations. *See generally* 42 U.S.C. ch. 6A, Subch. 1, § 201 *et seq.*; 42 C.F.R. Ch. IV, Subch. B, Pt. 405, Subpt. X; 42 C.F.R. Ch. IV, Subch. G, Pt. 491. Under federal requirements, FQHCs must "accept Medicare beneficiaries for care and treatment," 42 C.F.R. § 405.2434(e)(1), must provide "preventive primary health services," 42 C.F.R. § 405.2448(a), and are subject to record-keeping and reporting requirements, 42 C.F.R. § 405.2470, among other requirements.

If a state chooses to participate in Medicaid, it is required (by federal law) to cover services provided to Medicaid beneficiaries by FQHCs. *See* 42 U.S.C.

§ 1396a(bb)(1).  This does not, as the City claims, make FQHCs "creature[s] of Medicaid."  Dkt. 77 at 28:7-8.  It simply means that the federal government requires that states receiving federal funds for their Medicaid programs must cover services that FQHCs provide to Medicaid-insured individuals.  *See* 42 U.S.C. § 1396a(bb)(1); *see also* Cal. Welf. & Inst. Code § 14132.100(c) ("Federally qualified health center services … shall be reimbursed …").

The City asserts that FQHCs "depend[] on the state's voluntary participation in Medicaid, and can be terminated if the state decides to opt out."  Dkt. 77 at 28:11-12.  The City cites nothing to support this because it is simply not true.  The regulations cited above exist independent of the Medicaid program and FQHCs may operate regardless of whether the state participates in the program.  *See generally* 42 C.F.R. Ch. IV, Subch. B, Pt. 405, Subpt. X.  And even if it were true, Medicaid is still a *federal* program governed by *federal* rules and regulations with which the City acknowledges all participating states must comply.[4]

In fact, contrary to the City's assertion that it is "obvious[]" that SOS is "not the Government," FQHC staff are, *by statute*, "deemed to be [employees] of the [federal] Public Health Service" for purposes of the Federal Tort Claims Act.  42 U.S.C. § 233(g)(1)(A).  When an FQHC is sued for malpractice, the federal government defends the action as a suit against the government.  *See Pediatric & Fam. Med. Found. v. United States Dep't of Health & Hum. Servs.*, 2017 WL 8220596, at *5 (C.D. Cal. July 6, 2017) ("the United States is substituted in as defendant on behalf of the entity, and the FHQC is immune from liability in the suit"); *Martin v. Patel*, 2018 WL 2717848, at *3 (S.D. Cal. June 6, 2018) (similar); *see also, e.g.*, *Valdez v. Scottsbluff Operations LLC*, 2024 WL 2092038, at *1 (D. Neb. May 9, 2024); *Joseph v. Vaydovsky*, 2018 WL 5095990, at *2 (D.N.J. Oct. 18,

---

[4] A state's decision to participate in Medicaid is subject to numerous federal requirements.  *See generally California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007 (9th Cir. 2013); *see also Alameda Health Sys. v. Centers for Medicare & Medicaid Servs.*, 287 F.Supp.3d 896, 902-03.

2018); *Mendez v. United States*, 2017 WL 1882472, at *1 (D.N.J. May 9, 2017); *Young v. United States*, 152 F. Supp. 3d 337, 342 (D.N.J. 2015); *Fiori-Lacivita v. Franco-Palacios*, 2019 WL 2082957, at *2 (D.N.J. May 13, 2019).  Like other FQHCs, SOS and its providers are expressly deemed Public Health Services employees by HRSA.  *See* RJN Ex. A, B.

Regardless of whether FQHCs are "creatures" of federal law or state law, the government's treatment of FQHC staff as federal employees demonstrates that FQHCs undoubtedly "deal" with the federal government.  Indeed, FQHCs must "enter[] into an agreement" with CMS.  42 C.F.R. § 405.2430(a)(1).  And, as the City itself acknowledges, federal contractors are routinely recognized to be subject to intergovernmental immunity.  *See* Dkt. 77 at 28:23 (acknowledging that immunity applies where a state or local law affects "the operation of a federal program or contract"); *see also Boeing v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014); *GEO Group, Inc. v. Newsom*, 50 F. 4th 745, 755 (9th Cir. 2022).  In short, there should be little doubt that SOS can assert intergovernmental immunity.

## 2.   The Ordinances Discriminate Against FQHCs

A state or local law discriminates against the federal government if "it treats someone else better than it treats" the government and those with whom it deals, such as federal contractors.  *GEO Grp., Inc. v. Inslee*, 720 F.Supp.3d 1029, 1051 (W.D.Wash. 2024), *citing North Dakota v. United States*, 495 U.S. 423, 438 (1990).  This includes a prohibition on subjecting such an entity to "any economic burden," that is discriminatorily imposed.  *GEO Grp., Inc.*, at 1051.

SOS has adequately alleged that the Ordinances treat FQHCs like SOS differently from other similarly-situated entities such as private medical offices.  The Ordinances *expressly* apply different treatment to "government, government-subsidized, not-for-profit, or philanthropic entities" compared to for-profit entities.  SAC ¶ 152.  And SOS's complaint details the numerous ways in which the Ordinances impose requirements, burdens, and costs on SOS over and above those

1   that would be imposed on private for-profit medical practices.  *See, e.g.*, SAC

2   ¶¶ 194, 226-230.  For instance, entities requiring a CUP must pay fees of well over

3   ten thousand dollars or more for their applications to be processed.  SAC ¶ 226.

4   Such entities are also subject to Property Maintenance Agreements with the City,

5   which can restrict hours of operation harming SOS's ability to serve patients and its

6   revenue.  SAC ¶ 227.[5]  SOS and other FQHCs would also be subject to criminal

7   prosecution.  SAC ¶ 228.  Further, the City could revoke a CUP at any time,

8   causing SOS or other FQHCs to forfeit their entire investment in their facility.  *Id.*

9   As demonstrated by what occurred in this case, that threat itself severely limits the

10  ability for SOS to establish an FQHC in the P District at all.

11          Notably, the City offers no reason why FHQC's are not "similarly situated"

12  to for-profit medical centers in such a way that would necessitate or justify these

13  sorts of additional requirements and burdens.

14          This indisputably discriminatory treatment is comparable to cases where

15  courts have applied intergovernmental immunity.  In *United States Postal Serv. v.*

16  *City of Berkeley*, when the US Postal Service was selling a building, the city passed

17  a zone change to allow only "civic or community-oriented use" of the building.

18  228 F. Supp. 3d 963, 966 (N.D. Cal. 2017).  This "eliminated virtually all

19  commercially viable uses" of the building.  *Id.*  The court held that because the

20  practical effect was to frustrate the USPS's attempt to sell the property, while other

21  commercial use in the area remained unimpeded, the agency had plausibly alleged

22  that the law "effectively discriminate[d] against the USPS and those with whom it

23  deals."  *Id.* at 969; *see also United States v. Kernen Construction*, 349 F. Supp. 3d

24  988 (E.D. Cal. 2018) (state statute limiting damages in actions brought by the

25  government).  *See also*, *GEO Group, supra,* 720 F. Supp. 3d at 1052 (state law

26  imposing requirements on private detention facilities that in practice applied to only

27  
───────────────

28  [5] In this way, the Ordinances, in addition to discriminating against SOS and other
    FQHCs, also directly regulate their conduct in violation of the Supremacy Clause.

one facility contracted with federal government discriminated because it did not

apply to other similarly-situated facilities such as state prisons and local jails);

*Boeing Co. v. Movassaghi*, 768 F.3d 832, 840, 842 (9th Cir. 2014) (state law

(1) directly regulated DOE by "mandat[ing] the ways in which Boeing render[ed]

services that the federal government hired Boeing to perform," and

(2) discriminated against Boeing as a government contractor by applying more

stringent requirements than applicable elsewhere in the state).

Here, the Ordinances treat the federal government and those with whom it

deals—FQHCs—differently on their face as compared to private for-profit medical

offices, applying significantly more onerous requirements to SOS and other

FQHCs.  As in *GEO Group, Inc.*, the practical effect of the Ordinances is to apply

onerous CUP requirements to one or two federally-contracted FQHCs, while other

similar medical offices continue to operate without a CUP.  As in *United States

Postal Serv.*, the Ordinances are alleged to have targeted SOS specifically.  SOS

has therefore validly alleged an intergovernmental immunity claim.

**D.     The City's Challenges to the Third Claim for Relief Are Meritless**

> **1.     The City is Disqualified From Invoking the Federal Common Law
> Emergency Notice Exemption.**

In challenging SOS's Third Claim for Relief, the City has conceded that

section 65858 did not authorize the Urgency Ordinance.  Mot. 23:2-3.  "Simply,

§ 65858 does not and cannot apply to the Urgency Ordinance."  *Id.*  23:9-20.  As

the City also notes, 65858 provides the exclusive means of enacting an urgency

zoning ordinance "[w]ithout following the procedures otherwise required."  Mot.

23:7-8.

The City claims, instead, that the Urgency Ordinance was adopted under the

City's Charter and the federal common law notice exemption.  Given the City's

concession, it is no longer necessary for SOS to seek a declaration that (a) 45 days

after it was adopted on December 20, 2022, the Urgency Ordinance expired by

operation of law under section 65858; or (b) the Medical Office CUP Requirement in the Urgency Ordinance was void because the City violated section 65858 by purporting to "permit" rather than "prohibit" certain medical offices.

Despite the City's efforts to mischaracterize the relief sought in the Third Claim for Relief, that claim does <u>not</u> seek a declaration that, apart from the City's violation of SOS's procedural and substantive due process rights, the Ordinances are *independently* void as a result of the City's noncompliance with state notice and hearing requirements.

Instead of asserting any purely "state law" claims under those provisions, the Third Claim for Relief merely alleges the City's noncompliance with those statutes establishes that the City did not follow its "normal zoning procedures" (SAC ¶ 245) in adopting the Urgency Ordinance and thus would not be entitled to invoke the "emergency ordinance" exception recognized by the Ninth Circuit in cases such as *Samson.* Mot. 20:20-23.

In fact, by failing to follow normal notice procedures pursuant to Government Code section 65091, the City did not meet the procedural prerequisites specified in *Samson* to (1) adopt the Urgency Ordinance "in the normal manner prescribed by law" and (2) "hew[] to its ordinary protocol." (683 F.3d at 1061.)

Indeed, as the Ninth Circuit noted in *Harris* (904 F.2d at 504), the City's normal zoning procedures in adopting both the Urgency and the Permanent Ordinance would, at a minimum, have required "individual notice" to have been provided to SOS under Government Code section 65091.

**2.    Government Code sections 65009, 65010, and 65093 do not apply to Third Claim for Relief because no purely state law claims are asserted.**

Since no purely "state law" claims are asserted as grounds for independently overturning the Ordinances, the statute of limitations provisions of section 65009 of the Government Code and the "harmless error" provisions of section 65010 of that

1    Code do not apply to the Third Claim for Relief.

2    As noted above, the Ninth Circuit has never applied section 65009 to any

3    federal law claims and the same is true for section 65010.  Those sections simply

4    have no application to the due process, intergovernmental immunity, and

5    declaratory relief claims being asserted in the SAC because each of those claims is

6    grounded on federal law. Moreover, the California courts have held that "section

7    65010 does not apply to actions seeking declaratory relief" when plaintiffs are not

8    seeking to set aside ordinances based solely on violations of state law notice

9    requirements.  (*Env't Def. Project of Sierra Cnty. v. Cnty. of Sierra* (2008) 158

10    Cal.App.4th 877, 887.)

11    Because the First Claim for Relief states an "independently viable claim for

12    relief" under the Fourteenth Amendment and section 1983, the Third Claim for

13    Relief is derivative of that claim and is not subject to dismissal.  (*Cf.*, *Mir v.*

14    *Kirchmeyer,* 2014 WL 2436285, at *10 (S.D. Cal. May 30, 2014).)  For the same

15    reason, it is also subject to the same two-year statute of limitations that applies to

16    section 1983 claims.

17    The Third Claim for Relief also seeks a declaratory judgment that, for the

18    reasons stated in paragraphs 2, 57, and 72-73 of the SAC, the Urgency Ordinance is

19    void because (1) the purported "emergency" and "threat to health, safety, and

20    welfare" upon which the Ordinance was based were mere pretenses for which there

21    was no evidentiary support in the administrative record and (2) the purported

22    "emergency" and "threat" did not excuse the City from complying with its due

23    process obligations under the Fourteenth Amendment. (*See*, *Pac. Nw. Venison*

24    *Producers v. Smitch*, 1992 WL 613294, at *5 (W.D. Wash. Sept. 2, 1992) ( "The

25    purported emergency nature of the regulations did not justify dispensing with the

26    requirements of notice. . . [N]o emergency existed that would excuse compliance

27    with any applicable due process requirements.").)

28    Finally, the City also cited Government Code section 65093 for the

proposition that, when notice is given pursuant to this title, the failure of any person
to receive that notice is not grounds to invalidate an action for which notice was
given.  On its face, that section only applies when notice is *actually given*, but is
nevertheless not received.  It does not apply where, as here, notice is <u>not</u> given as
required by law.

### 3.   The City did not comply with applicable notice requirements.

The City contends that the Urgency Ordinance was adopted under City
Charter section 415, allowing it to adopt permanent zoning ordinances on an
urgency basis, without providing any public notice whatsoever.  To the contrary,
Government Code section 65804 expressly states that it is applicable to charter
cities, who must adopt zoning code provisions and abide by the procedures set forth
in Government Code section 65854.  Section 65854, in turn, requires public notice
of any new or amended zoning ordinance be served in conformity with section
65090, and that, if the ordinance affects the uses of real property, the notice must
also be given under section 65091.  Section 65091 requires individual notice to any
affected property owner, <u>project applicant</u>, and <u>authorized representative of the
property owner</u>.  Since the City concedes that the exemption in section 65858 does
not apply in this case, the City was required to comply with these applicable
Government Code procedures despite any contrary provisions in the City Charter.

The City *concedes* the applicability of section 65091 in this case (Mot.
25:11-14), but contends that (1) section 65091 only requires notice to the "owner of
the subject property as shown on the latest equalized assessment roll," and (2) SOS
"never owned the Property."  *Id.*  However, section 65091(a)(1) also provides that
"Notice shall also be mailed to the owner's duly authorized agent, if any, and to the
project applicant."  SOS was both a project applicant (SAC  ¶ 26), and the owner's
duly authorized agent as a result of the purchase agreement (SAC ¶ 21).

Furthermore, the Medical Office CUP Requirement in both of the Ordinances
was directly targeted at SOS and the Main Street Property.  SAC ¶¶ 18-26, 64.

Given that both Ordinances "exceptionally affected" SOS as an equitable landowner and project applicant, SOS was clearly entitled to individual notice under section 65091.

The City claims that it published and mailed notice of the December 12, 2022 Planning Commission hearing, in full compliance with section 65090.  However, that notice was published on November 29, 2022—just one day after the City's Planning Manager had informed SOS in writing that a discretionary permit would <u>not</u> be required for its remodeling project—and, not surprisingly, the November 29th notice made <u>no</u> mention whatsoever of the Medical Office CUP Requirement. City RJN, Exh. 6 at 178, 180. The same omission was made in the notice that the City claims was published and mailed for the Permanent Ordinance in January 2023.

Importantly, <u>no</u> legal notice as required by the Government Code was published or mailed for the Urgency Ordinance.  Moreover, although "agendas" posted on the City's website prior to the Planning Commission and City Council hearings for the two Ordinances may or may not have satisfied the agenda requirements of the Brown Act, they most certainly did <u>not</u> satisfy the legal notice and hearing requirements in sections 65804, 65090, 65091, 65094, and 65854 of the Government Code.

In addition to the foregoing legal notice deficiencies, the City has not provided, as part of its RJN, a list of any addressees to whom the notices were allegedly mailed, nor any other evidence that notices were mailed to anyone at all, such as to the owner of record of the Main Street Property.  The City does not deny that no notice was provided to SOS.  In light of the foregoing, SOS respectfully submits that the Third Claim for Relief plausibly alleges a claim for declaratory relief under the Due Process Clause and section 1983.

1  Dated:  December 16, 2024        BY:  /s/ *Nora N. Salem*
2                                        Brett J. Williamson
                                         Nora Salem
3                                        **O'MELVENY & MYERS LLP**

4                                        Edmond M. Connor
                                         Douglas A. Hedenkamp
5                                        **TUCKER ELLIS LLP**

6                                        Attorneys for Plaintiff Share Our Selves

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF COMPLIANCE**

2

3

The undersigned, counsel of record for Plaintiff Share Our Selves, certifies

4

that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

5

Dated:  December 16, 2024

6

7

Respectfully submitted,

O'MELVENY & MYERS LLP

8

9

BY:  /s/ *Nora N. Salem*

10

Brett J. Williamson
Nora Salem
**O'MELVENY & MYERS LLP**

11

12

Edmond M. Connor
Douglas A. Hedenkamp
**TUCKER ELLIS LLP**

13

Attorneys for Plaintiff Share Our Selves

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Proof of Service